UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE MARIE WILLIAMS,

    Plaintiff,

v.

NANCY A. BERRYHILL,

    Defendant.

Case No. 2:18-cv-10052
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [21],
ADOPTING REPORT AND RECOMMENDATION [20], AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]**

Plaintiff Jamie Marie Williams, now 58 years old, suffers from several medical conditions, including back pain, migraines, carpal tunnel syndrome, and depression. Believing that her medical conditions prevented her from working full time, she applied for disability benefits under the Social Security Act. An administrative law judge reviewed Williams' medical file and found that from February 20, 2015 through December 14, 2016 (the date of the ALJ's decision), Williams' conditions did not render her disabled as that term is used in the Act. So the Commissioner of Social Security did not grant Williams benefits.

After completing the administrative review process, Williams filed this lawsuit challenging the Commissioner's determination that she is not disabled under the Social Security Act. Both Williams and the Commissioner moved for summary judgment. Those motions, and all other pretrial matters, were referred to Magistrate Judge David R. Grand. Magistrate Judge Grand recommends granting the Commissioner's motion and affirming the ALJ's disability determination.

Williams objects. Although she effectively presents the same claims of error that she presented to the Magistrate Judge, the Court has conducted an independent review of the entire medical record and addresses anew the three issues raised by Williams' objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Before examining the three alleged errors that the ALJ made, the Court briefly summarizes the medical conditions that are the primary basis for Williams' claim of disability.

*Back pain*. In March 2015, images were taken of Williams' lumbar spine; the radiologist said, "No evidence of acute abnormality. Minimal findings of spondylosis[.]" (PageID.468.)[1] Still, the record plainly reflects that Williams' back bothered her. From February 2015 through July 2016, Dr. Kai Palm, Williams' primary-care physician, treated Williams' back pain with Tylenol with codeine, Naprosyn, Flexeril, Neurontin, and physical therapy. (*See e.g.*, PageID.452, 560, 556, 563, 567.) And when Williams started physical therapy in May 2016, she said her pain was 10-out-of-10 during activity. (PageID.627) But, by the end of physical therapy, her pain was down to 7-out-of-10 during activity and only 2-out-of-10 during inactivity. (PageID.617.) The physical therapy discharge notes state, "Patient reports that she is now able to stand for 30 minutes without difficulty. No difficulties with bathing and dressing. Able to sleep without any discomfort. Patient reports significant increase[] in functional capacity." (PageID.618.) But when Williams next saw Dr. Palm in July 2016 (the last visit this Court may consider, *see Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)), Dr. Palm noted, "Symptoms improved with PT although returned to baseline once completed. Pt plan to start exercising at [Rehabilitation Institute of Michigan]" (PageID.556).

---

[1] Unless otherwise indicated, all "PageID" references are to the administrative transcript, ECF No. 13.

*Migraines*. In February 2015, Williams reported having daily migraines that would last "hours." (PageID.452.) In April 2015, a treater at a neurology clinic noted that Williams' headaches were "8/10" and lasted between "5 and 10 minutes" if she took Tylenol with codeine (hours if not). (PageID.604.) In November 2015, Williams told Dr. Palm that she had migraines daily. (PageID.575.) In December 2015, Williams reported "limited symptoms" since the November visit. (PageID.572.) But in April 2016, she reported having the migraine "symptoms usually in the middle of the night at least 3 days/week." (PageID.560.) And in July 2016, Dr. Palm noted that Williams' migraines were "uncontrolled." (PageID.556.) Throughout the disability period, it appears that Naprosyn helped Williams with her migraine symptoms. (PageID.556, 560, 572, 576.) At her hearing, the ALJ asked, "Are your migraines under control?" (PageID.191.) Williams responded, "With medication they are." (PageID.191)

*Carpal Tunnel Syndrome*. While an EMG revealed mild, primarily demyelinating, mononeuropathy at the right wrist, the test could not explain Williams' problems with her fourth or fifth fingers in her right hand. (PageID.611.) At one point, Williams reported an issue with her left wrist (PageID.576), but EMG testing did not reveal any problem with Williams' left arm. (PageID.610.) Dr. Palm prescribed Elavil and Naprosyn for Williams' wrist pain (both of which also helped with Williams' other ailments) and, eventually, he prescribed braces for both wrists (PageID.579).

*Depression*. Williams attended counseling and was prescribed Elavil and Zoloft for her depression. One of the causes of Williams' depression was her mother's death many years before the disability period. (PageID.510.) In July 2016, notes from Williams' counseling center stated, "She reports less depression and less isolation." (PageID.645.) At the hearing before the ALJ,

3

Williams stated that while she still tended to isolate herself, her depression was "okay." (PageID.189.)

With that medical history, the Court turns to Williams' objections.

*Objection One.* Williams first claims that the ALJ erred in rejecting the assessment of her treating physician, Dr. Palm. (*See* ECF No. 21, PageID.775.) Under the social security laws, a treating-source opinion is to be given "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (internal quotation marks omitted). And if an ALJ does not give a treating-source opinion controlling weight, she must provide "good reasons" for the weight assigned. *See id.* Here, the ALJ gave Dr. Palm's assessment of Williams' functioning "little weight because [it was] grossly inconsistent with the evidence as a whole." (PageID.170.) Williams disagrees: "the opinion is actually consistent with the record." (ECF No. 21, PageID.775; *see also* ECF No. 15, PageID.708–710.)

The Court appreciates where Williams is coming from. The record indicates that she constantly took a host of medications for both her back pain and migraines and, despite medication, neither fully resolved during the disability period. She also took medication for her carpal tunnel syndrome and was ultimately prescribed braces. And Williams' depression required counseling and medication.

Still, neither the Magistrate Judge nor this Court makes the disability determination in the first instance. That was the Commissioner's job, 42 U.S.C. § 405(g), which she delegated to the ALJ. As such, this Court's task is merely to decide whether substantial evidence supports the ALJ's

decision—even if substantial evidence supports a contrary conclusion. *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

Having examined the entire medical record, the Court finds that a substantial factual basis underlies the ALJ's decision to assign Dr. Palm's assessment little weight. Dr. Palm opined that Williams could sit for only four hours and stand or walk for only one hour during an eight-hour workday. (PageID.631.) Dr. Palm thus implied that Williams would need to lie down three hours during a normal workday. But one fair interpretation of the record is that Williams was not quite so limited. In fact, after physical therapy, Williams reported that her back pain at rest was only "2/10" (PageID.617), which, the ALJ could have reasonably thought included sitting. Moreover, at discharge from physical therapy, Williams stated that she could "stand for 30 minutes without difficulty," which gives reason to doubt Dr. Palm's implication that Williams could stand only for one hour out of eight. True, Dr. Palm noted that Williams' pain returned once Williams stopped physical therapy, but that same note indicated that Williams planned to start at a rehab clinic. (PageID.556.) So the ALJ could have reasonably inferred that Williams' back would again improve. Further, counseling notes indicate that Williams had plans to "walk to her daughter[']s home 4 days a week" and plans to "go to the mall with one of her daughter[s] and she will [get] a lot of walking in then." (PageID.646, 656, 676.) Moreover, the images of Williams' spine did not reveal any significant abnormalities. And to the extent that Dr. Palm's opinion about Williams' ability to sit, stand, and walk was based in part on her migraines, Williams told the ALJ that her migraines were under control with medication and records suggest that they would subside in 10 minutes with medication. Thus, in all, the ALJ had a substantial evidentiary basis for rejecting Dr. Palm's sitting and standing limitations.

5

The ALJ also had a valid basis for discounting another portion of Dr. Palm's opinion. Dr. Palm opined that Williams could only use her *left* hand 50% of the workday. (PageID.631.) The ALJ found that there was "no evidence" to support that limitation. (PageID.170.) That was reasonable. True, Williams did on one occasion tell Dr. Palm that her left hand was freezing up (PageID.575) and Dr. Palm did prescribe bilateral braces (PageID.579). But for the vast majority of visits to Dr. Palm, Williams never complained about her left hand. And an EMG study did not uncover issues with Williams' left upper extremity. (PageID.611.)

In sum, the ALJ could have reasonably credited Dr. Palm's opinion. But the ALJ could have reasonably assigned Dr. Palm's opinion "little weight." As such, the ALJ's choice of the second over the first is not reversible error. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." (internal quotation marks and citation omitted)).

*Objection Two.* Williams' second objection is more legal than factual. (*See* ECF No. 21, PageID.776.) She says that other than Dr. Palm's opinion, there was no functional assessment from a medical expert. And so, Williams infers, the ALJ herself came up with an assessment of what she could still do. But, Williams points out, the ALJ is not a doctor. So, says Williams, the ALJ's residual functional capacity assessment lacked substantial evidentiary support. (*See* ECF No. 15, PageID.710; ECF No. 21, PageID.776.)

There is some legal support for Williams' opinion. *See e.g.*, *Wyatt v. Comm'r of Soc. Sec.*, No. 12-11406, 2013 WL 4483074, at *16 (E.D. Mich. Aug. 19, 2013). The idea is that ALJs—as non-physicians—are not competent to take raw medical data and extrapolate what a claimant can and cannot do. *See id.* ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare

6

medical findings." (internal quotation marks and citation omitted)). But taken too far, this idea demands a functional capacity assessment from a medical professional in every case. Magistrate Judge Anthony Patti analyzed this issue in depth and noted that "there are likely instances in which an ALJ can formulate an RFC without the aid of opinion evidence." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 830 (E.D. Mich. 2017) (Patti, M.J.). Magistrate Judge Patricia Morris also addressed the issue in depth and "d[id] not find any brightline rule that medical opinions must be the building blocks of the RFC." *Charbonneau v. Comm'r of Soc. Sec.*, No. 2:18-CV-10112, 2019 WL 960192, at *17 (E.D. Mich. Jan. 11, 2019) (Morris, M.J.), *report and recommendation adopted*, 2019 WL 952736 (E.D. Mich. Feb. 27, 2019) (Cox, J.). That approach makes sense: while it may be true that "lay intuitions about medical phenomena are often wrong," *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990), they are sometimes right. And proceeding in a case-by-case fashion finds support in Sixth Circuit precedent. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." (internal quotation marks and citation omitted)). Thus, while it is the rare case in which the ALJ can formulate a residual functional capacity assessment without relying, at least in part, on an assessment by a medical professional, those cases do exist. *Cf. Gross*, 247 F. Supp. 3d at 830 ("[T]here is significant case law in this district confirming the general principle that the ALJ must

generally obtain a medical expert opinion when formulating the RFC unless the medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a commonsense judgment about functional capacity[.]").

This is one of those rare cases. To start, Williams' conditions—back pain, carpal tunnel syndrome, migraines, and depression—are not foreign to lay people and certainly not to social security administrative law judges. And Williams' treatment for those conditions was not overly sophisticated. It consisted primarily of pain medication, muscle relaxants, physical therapy, counseling, and anti-depressants. Moreover, Dr. Palm's notes explained the purpose of each medication. And there is very limited diagnostic evidence in this case. And for what diagnostic testing was performed, physicians wrote summaries that can be understood by lay people—at least when equipped with a dictionary. And the physical therapy notes help inform what Williams could do with her back and wrist. Moreover, the record is replete with Williams' lay descriptions of her symptoms. Finally, although not adopted by the ALJ, Dr. Palm's opinion was still a buoy that kept the ALJ from being totally at sea. Thus, in this case, the record as whole permitted the ALJ to assess, with reasonable accuracy, Williams' functional capacity.

*Objection 3*. Williams' last objection relates to the ALJ's handling of her mental and emotional impairments. The ALJ found that, despite her medical conditions, Williams could perform her old job at a casino. (PageID.171.) But, argues Williams, her old job "required constant interaction with the public." (ECF No. 15, PageID.713.) And, Williams points out, the ALJ found that she had "mild" impairment in mental and emotional functioning. So, says Williams, "[t]he ALJ erred by failing to include any social limitations in her hypothetical question to the vocational expert, despite finding mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace." (ECF No. 15, PageID.714.)

If Williams' point is that the ALJ's narrative is somehow internally inconsistent, the Court disagrees. True, Williams testified that her past job involved social interaction: "[A]s the patrons walk up, if they haven't played, they give me their ID and I'll put it in the system, and I'll print up this paper that lets them know how long they've been there or how much they have spent." (PageID.203.) But the ALJ found that Williams only had "mild" limitations in social functioning. (PageID.167.) And, under the law, a mild limitation is one where the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis" is only "slightly limited." *See* 20 C.F.R. pt. 404, subpt. P, app'x 1, 12.00(F). There is no apparent inconsistency in finding that Williams was "slightly limited" in social functioning but could still run patron IDs.

But perhaps Williams' point is that regardless of how the ALJ scored her impairments (mild or otherwise), the residual functional capacity provided to the vocational expert should have included a social-interaction limitation. (*See* ECF No. 21, PageID.777; ECF No. 15, PageID.714.) But if this is Williams' argument, she has not marshalled evidence showing that she has significant limitations in socializing. And the Court's review of the record reveals that Williams may not have been significantly limited in socializing. True, one of the symptoms that Williams experienced from depression was a desire to isolate. (PageID.189, 501, 635.) Indeed, at the hearing, Williams told the ALJ that while her depression was "okay," she was still in a "state to where [she] want[ed] to be by [her]self." (PageID.189.) But counseling and medication did seem to help some with Williams' isolation, Williams at one point "plan[ned] to go to the mall with one of her daughter[s]" (PageID.645), she went grocery shopping (albeit with the help of her son) (PageID.189), and she attended group therapy sessions (PageID.190, 448). In all, there was record support for omitting a limitation on social interaction from Williams' residual functional capacity assessment.

* * *

Having looked at the issues Williams has raised via her objections from scratch, the Court ends up at the same place as the Magistrate Judge. While Williams had serious medical conditions during the disability period, the Court cannot say that the ALJ's determination that she was not disabled under the Social Security Act lacks substantial record support. The Court thus ADOPTS and ACCEPTS the Magistrate Judge's report and recommendation, DENIES Williams' motion for summary judgment, GRANTS the Commissioner's, and AFFIRMS the ALJ's disability determination.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: March 20, 2019

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon counsel of record on this date, March 20, 2019, using the Electronic Court Filing system.

s/William Barkholz
Case Manager to
Honorable Laurie J. Michelson